```
             IN THE UNITED STATES DISTRICT COURT FOR
            THE DISTRICT OF MARYLAND, NORTHERN DIVISION
                                 *
RAHUL K. NATH, M.D.,
                                 *
     Plaintiff,
                                 *    CIVIL NO.: WDQ-06-3454
v.
                                 *
ALLAN J. BELZBERG, M.D.,
                                 *
     Defendant.
                                 *

*    *    *    *    *    *    *    *    *    *    *    *    *
```

MEMORANDUM OPINION

In this diversity action Rahul K. Nath, M.D. has sued Allan J. Belzberg, M.D. for defamation and tortious interference under Maryland common law. Pending is Dr. Belzberg's motion for summary judgment and Dr. Nath's motions (1) for a continuance to respond to Dr. Belzberg's motion, and (2) to strike Dr. Belzberg's reply memorandum. For the reasons discussed below, the motion for summary judgment will be denied, and Dr. Nath's motions for continuance and to strike will be denied.

I.   Background

On April 28, 2006, in the District Court for Harris County, Texas, Dr. Nath filed an amended petition that stated claims for defamation and tortious interference against Dr. Belzberg. On November 28, 2006, Dr. Belzberg was dismissed for lack of personal jurisdiction from the Texas case. Dr. Nath has appealed

1

that court's decision.  On December 28, 2006, Dr. Nath sued Dr. Belzberg in this Court.

The parties appear to agree that Dr. Belzberg discussed Dr. Nath with the parents of three patients and a doctor. Specifically, Dr. Belzberg spoke with: (1) Kimberly Stallcup, the mother of a patient, on May 23, 2005 at a brachial plexus injury ("BPI") symposium sponsored by Johns Hopkins University ("JHU" and the "Symposium"); (2) Crystal Dubois, in the Spring of 2005 during an evaluation of her son; (3) Lin Min Kong, the mother of a patient, at a September 2005 BPI conference in Chevy Chase, Maryland (the "Conference"); and (4) Dr. Karen E. Pape, M.D., at the Symposium.

II.  Analysis

A.  Emergency Motion for Continuance

Dr. Nath argues that Dr. Belzberg's motion is premature and should be delayed for discovery.  Dr. Belzberg argues that the motion for continuance is deficient.

Under Rule 56(f) a continuance should be granted and summary judgment refused "where the nonmoving party has not had the opportunity to discover information that is essential to his opposition."  *Ingle ex rel. Estate of Ingle v. Yelton*, 439 F.3d 191, 196 (4th Cir. 2006) (internal citations omitted).  A Rule 56(f) motion should be denied, however, if "the additional

evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Id*. (quoting *Strag v. Bd. of Trustees*, 55 F.3d 943, 954 (4th Cir. 1995)).

Dr. Nath seeks general discovery and to depose: (1) Dr. Belzberg; (2) a representative of Dr. Belzberg's employer; (3) the three patients and doctor with whom Dr. Belzberg spoke; and (4) "other attendees" of the Symposium and the Conference. Mem. Supp. Emer. Mot. at 6. Dr. Nath asserts that "[t]he material Plaintiff seeks through discovery is relevant to Plaintiff's defamation and tortious interference claims." *Id*. at 7.

Dr. Nath has not identified any particular information sought, and has not explained why that discovery is essential to his opposition to the motion. Dr. Nath's motion does not address any of the factors that suggest that the motion should be granted, as there: (1) has been no identification of relevant information sought; (2) are no outstanding discovery claims regarding the information sought; and (3) is no evidence (let alone argument) that the information sought is possessed only by Dr. Belzberg. *Ingle*, 439 F.3d at 196-97 (citations omitted). Accordingly, Dr. Nath's motion for continuance will be denied.

B.   Summary Judgment

i.   Standard of Review

Under Rule 56(c), summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The court must view the facts and reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The opposing party, however, must produce evidence upon which a reasonable fact finder could rely. *Celotex*, 477 U.S. at 317. The mere existence of a "scintilla" of evidence is insufficient to preclude summary judgment. *Anderson*, 477 U.S. at 252.

ii.  Defamation

Dr. Belzberg argues that Dr. Nath's defamation claim is barred by Maryland's one-year statute of limitations for such claims, Md. Code Ann., Cts. & Jud. Proc. § 5-105. Dr. Nath does not argue that the limitations period is longer or governed by another statute, instead, he argues that his defamation claim was

4

tolled by Maryland Rule of Civil Procedure 2-101(b), which states:

> Except as otherwise provided by statute, if an action is filed in . . . a court of another state within the period of limitations prescribed by Maryland law and that court enters an order of dismissal . . . for lack of jurisdiction . . . an action filed in a circuit court within 30 days after the entry of the order of dismissal shall be treated as timely filed in this State.").

Dr. Belzberg was dismissed on November 28 from the Texas case and Dr. Nath sued in this Court on December 28.  Thus, the statute of limitations does not bar Dr. Nath's defamation claims, to the extent they accrued less than one year before April 28, 2006.

Dr. Belzberg next argues that he is not liable for defamation because the statements were protected opinion.  In discussing opinion, the Supreme Court has said:

> Under the First Amendment there is no such thing as a false idea.  However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries, but on the competition of other ideas.

*Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 340 (1974).  "Whether a statement constitutes fact or opinion is a question of law for the trial court to decide."  *Potomac Valve and Fitting, Inc. v. Crawford Fitting*, 829 F.2d 1280, 1285 n.12 (4th Cir. 1987).

Although opinion is protected, a statement may still be defamatory "even if it seems merely to state an opinion." *Hatfill v. New York Times Co.*, 416 F.3d 320, 333 n.6 (4th Cir. 2005).  "Although loose, figurative, or hyperbolic language expressing a mere opinion may not fairly be viewed as being

defamatory, a false statement of fact cannot escape liability for defamation under the guise of opinion." *Murray v. United Food and Commercial Workers Intern. Union*, 289 F.3d 297, 305-06 (4th Cir. 2002) *(citing Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 21 (1990)).

   Stallcup has sworn that Dr. Belzberg said that Dr. Nath: (1) is under investigation by the FBI for fraud; (2) does not perform all his surgeries, but merely closes some patients; (3) does not conduct surgeries he reports in the medical records; (4) performed too many surgeries on Stallcup's daughter and had probably not done things as told; and (5) generally was a fraud. Stallcup Aff. ¶ 7.  Stallcup asserts that Dr. Belzberg told her that he learned the information from a reliable source.  *Id*. ¶ 5. Stallcup also asserted that Dr. Belzberg made similar comments to others at the Symposium.  *Id*. ¶ 9.

   Dubois has sworn that Dr. Belzberg said that Dr. Nath: (1) had been fired from the Texas Children's Hospital; (2) was under criminal investigation by the FBI for fraud; (3) conducted one surgery on a patient, but billed for another; and (4) did not cooperate with the other doctors treating BPI.  Dubois Aff. ¶ 4. Dr. Belzberg asserted that such information travels fast in the medical community.  *Id*.

   Kong has sworn that Dr. Belzberg: (1) questioned why Dr. Nath performed a particular type of surgery; (2) said that Dr.

6

Nath did not follow the standard of care; (3) said that Kong's daughter's chances of recovery were lessened by Dr. Nath's work; and (4) referred to a particular surgery Dr. Nath mentioned to Kong as Dr. Nath's "flavor of the month."  Kong Aff. ¶ 3.

Dr. Pape has sworn that Dr. Belzberg stated that Dr. Nath (1) had been fired by Baylor College of Medicine; and (2) was being investigated by the FBI for Medicaid fraud.  Pape Aff. ¶ 3. Later Dr. Belzberg emailed Dr. Pape to say there were rumors as to why Dr. Nath had been "ejected from the University" and that Dr. Nath's reputation was "dubious at best."  *Id*. ¶ 4.  Dr. Belzberg told Dr. Pape that he learned this information from another BPI doctor.  *Id*. ¶ 3.

The statements that Dr. Nath: (1) is the subject of an FBI investigation; (2) was terminated; (3) does not complete surgeries; and (4) completes some surgeries and bills for others are not protected opinion but objectively verifiable statements of fact.  The statements regarding standard of care, whether surgeries are necessary, and whether surgeries were helpful to the child are protected medical opinion.  Accordingly, Dr. Belzberg's statements to Kong are protected opinion, but at least some of his statements to each of the other three were not protected opinion.

Next, Dr. Belzberg argues that he is protected from liability by privilege.  Indeed, Dr. Belzberg "may assert a

qualified, or conditional, privilege." *Gohari v. Darvish*, 363 Md. 42, 55 (2001). "[T]he question of whether a defamatory communication enjoys a conditional privilege is one of law for the court." *Id*. at 63.

With respect to conditional privilege, a person may not be liable for a defamatory statement that is "in furtherance of some interest of social importance, which is entitled protection." *Id*. at 55 (citations omitted). Maryland's Court of Appeals has favorably cited as a basic common law qualified privilege "the privilege to publish to someone who shares a common interest, or, relatedly, to publish in defense of oneself or in the interest of others." *Id*. at 57 (citing Dan B. Dobbs, The Law of Torts, § 413, at 1158 (2000)).

> The standard for common interest is:
>
> An occasion is conditionally privileged when the circumstances are such as to lead any one of several persons having a common interest in a particular subject matter correctly or reasonably to believe that facts exist which another sharing such common interest is entitled to know.

*Id*. (*quoting Hanrahan v. Kelly*, 269 Md. 21, 28 (1973)).

> Common interests are usually found among members of identifiable groups in which members share similar goals or values or cooperate in a single endeavor . . .. The idea is to promote free exchange of relevant information among those engaged in a common enterprise or activity and to permit them to make appropriate internal communications and share consultations without fear of suit.

*Id*. at 58 (citations omitted).

Dr. Belzberg asserts that there is a common interest in the

8

treatment of BPI between Dr. Belzberg and the patients. Similarly, as doctors who treat children with neurological disorders, he indicates that there is a common interest in BPI between himself and Dr. Pape.

"[W]here the defamatory publication is in response to an inquiry and not volunteered, the defendant is afforded greater latitude in what he may say about the plaintiff without incurring liability." *Id*. at 60-61. The three patients engaged Dr. Belzberg in a discussion about BPI and their children's treatment. Stallcup Aff. ¶ 4; Dubois Aff. ¶ 3; Kong Aff. ¶ 3. Dr. Belzberg's comments to Dr. Pape, however, do not appear to have been solicited.

Given the seriousness of BPI, the concern over the safety of a child, and that the patients engaged him in conversations, Dr. Belzberg's comments to the patients regarding Dr. Nath are relevant to the childrens' treatment and sufficiently related to the common interest shared between Dr. Belzberg and the patients to be qualifiedly privileged. As Dr. Belzberg's comments to Dr. Pape were merely unsolicited assertions of fact that do not relate to advancing the treatment of BPI, they furthered no commonly held interest of the doctors.

Even a privileged statement may defame if made with malice, i.e. "with knowledge of falsity or reckless disregard for the truth." *Gohari*, 363 Md. at 74. Whether the privilege "has been

9

forfeited by malice is usually a question for the jury." *Id*. at 63. The comments regarding the firing and the alleged FBI investigation could lead a reasonable jury to find malice. Accordingly, summary judgment will be denied as to Dr. Nath's defamation claim.

iii. Tortious Interference

Dr. Nath's tortious interference claim is for tortious interference with economic relations. Mem. Opp. Mot. for Summ. J. 23-24. As a result, Dr. Nath must prove:

> (1) intentional and willful acts; (2) calculated to cause damage to the plaintiff in [his] lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendant[] (which constitutes malice); and (4) actual damage and loss resulting.

*Carter v. Aramark Sports and Entertainment Services, Inc.*, 153 Md.App. 210, 240 (2003).

The requisite interfering conduct, which is independently wrongful or unlawful, is satisfied by defamation. *Id*. at 241. Dr. Nath has said that "patients . . . have decided not to continue treatment with him after hearing similar statements." Mem. Opp. Mot. for Summ. J. at 24. He cites generally to his own affidavit and that of Stallcup. Stallcup has testified that other families who heard the defamatory statements will not return to Dr. Nath. Stallcup Aff. ¶ 8. Accordingly, summary judgment will be denied as to the tortious interference claim.

C.   Motion to Strike

Under Federal Rule of Civil Procedure 6(b) when an act, here the filing of a reply memorandum, is to be done at or within a certain time, the court may, in its discretion, "upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect." Fed. R. Civ. P. 6(b).  Here, there is no question that the Reply Memorandum was filed on March 13, 2007 when it was supposed to be filed one day before on March 12; the late filing was the result of neglect.

Whether neglect is excusable is an equitable inquiry.  The one-day delay in the filing of the reply resulted in no prejudice to Dr. Nath.  As the Court finds no evidence of bad faith in the delay, the motion to strike will be denied.

III. Conclusion

For the reasons discussed above, the motion for summary judgment will be denied.  In addition, Dr. Nath's motions for a continuance and to strike will be denied.


<u>July 13, 2007</u>                           <u>      /s/            </u>
Date                                William D. Quarles, Jr.
                                    United States District Judge